MARIAN FINN, Plaintiff-Appellant, v. DOMINICK'S FINER FOODS, INC., *et al.*, Defendants (Kezios Properties Group, Defendant-Appellee).

First District (3rd Division) No. 1—92—0160

Opinion filed March 31, 1993.

TULLY, P.J., dissenting.

Robert J. Quinn, of Robert J. Quinn, Ltd., of Chicago, for appellant.

Peter J. Crowley, of Crowley, Ross & Demeo, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff Marian Finn appeals from the summary judgment entered in her claim against defendant Kezios Properties Group[1] for injuries she sustained when she fell in a parking lot owned by defendant. According to plaintiff, summary judgment was inappropriate because there was a genuine issue of fact as to the presence of an unnatural accumulation of ice or water, and the defendant owed plaintiff a duty of ordinary care.

In her complaint, plaintiff alleged that she was in the Dominick's parking lot located at Brementowne Mall in Tinley Park, Illinois, on October 25, 1988. Defendant was the landlord of that area of the mall. Around 8 a.m., plaintiff was walking on the public walkway near the entrance to Dominick's when she fell. In count III of her complaint, plaintiff alleged that her fall and subsequent injuries were the direct result of defendant's negligence. According to the complaint, defendant's negligence was demonstrated by the following alleged omissions or acts:

"(A) [n]egligently and carelessly permitted, acquiesced or allowed the walkway at the aforesaid location to be and remain in a slippery and dangerous condition, when defendant knew or should have known, that such condition created a situation of imminent danger for store patrons, such as plaintiff, walking thereon;

(b) [n]egligently and carelessly failed to warn or alert store patrons to a potentially hazardous slippery condition, when it knew or should have known that such a condition created a situation of imminent danger for persons, such as plaintiff, walking thereon;

(c) [n]egligently and carelessly failed to take measures to inform or apprise HEINEMANN or DOMINICK'S of said poten-

---

[1]Dominick's Finer Foods, Inc., and Heinemann's Bakeries were defendants in the suit filed by plaintiff. However, the appeal from the summary dismissal of the complaint as to Dominick's and Heinemann's was dismissed as untimely.

tially hazardous slippery condition, when it knew or should have known that such a condition created a situation of imminent danger for store patrons, such as plaintiff, walking thereon;

(d) [n]egligently and carelessly failed to remove or obviate said potentially hazardous slippery condition, when it knew or should have known, that such a condition created a situation of imminent danger for store patrons, such as plaintiff, walking thereon."

Defendant filed a response and set forth plaintiff's negligence as an affirmative defense.

Plaintiff's discovery deposition was taken on January 12, 1990, and revealed that she exited the Dominick's store and proceeded from the concrete to the asphalt ramp about 10 feet from the door. She then fell and landed on her leg. Plaintiff testified that the temperature was below freezing and she had to scrape the frost from her car windows that morning. When asked if she saw ice, plaintiff responded that there was frost in the parking lot. In response to questions concerning that condition of the area where she fell, plaintiff explained that it was frosty. She did not see a patch of ice or any water on the ground where she fell. Plaintiff further stated that she was unaware of anything which could have caused an unnatural accumulation of frost.

Discovery depositions were also taken from Louis Ballasch, a truck driver for Heinemann's Bakery, and Gregory Coleman, general mall manager of Brementowne Mall for defendant. These depositions revealed that Ballasch sometimes rinsed his truck interior near the entrance to Dominick's, using a five-gallon bucket of water he obtained from the bakery in Dominick's. Ballasch denied that any of this water flowed onto the cart ramp area where plaintiff fell since it was uphill from the area where he parked the truck. Coleman had viewed this washing procedure about twice a week over a five-year period. He noted that usually about two gallons of water remained on the pavement where plaintiff fell, but stated that it did not appear to present an unsafe condition. Ballasch could not recall if this procedure occurred on the day that plaintiff fell. However, Coleman stated that he saw Ballasch rinsing out the truck at Dominick's about one hour after Coleman learned of plaintiff's fall. A month or so after plaintiff's fall, Ballasch was told to stop his practice of rinsing out the Heinemann's truck near the ramp.

Relying upon plaintiff's deposition, defendant filed a motion for summary judgment. The motion was granted on December 9, 1991, based upon an absence of sufficient evidence of an unnatural accumulation.

Summary judgment is appropriate when the pleadings, admissions, depositions, and any affidavits demonstrate that no genuine issue of essential fact exists and that the movant is entitled to judgment by operation of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) When the court is presented a motion for summary judgment, it must construe the evidence strictly against the movant and liberally in favor of the opposing party. (*Tersavich v. First National Bank & Trust Co.* (1991), 143 Ill. 2d 74, 571 N.E.2d 733.) A trial court's order granting summary judgment will not be reversed on appeal unless a material issue of fact is found to exist. *Streams Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 536 N.E.2d 459.

 It is well established in Illinois that a plaintiff cannot recover for injuries sustained in a fall on ice, snow or water unless she establishes that the accumulation was not natural and was created directly or indirectly by the defendant. (*Stypinski v. First Chicago Building Corp.* (1991), 214 Ill. App. 3d 714, 571 N.E.2d 717.) In order to withstand a motion for summary judgment, a plaintiff must come forward with sufficient facts to allow a trier of fact to find that the defendant was responsible for the unnatural accumulation which caused plaintiff's injuries. *Crane v. Triangle Plaza, Inc.* (1992), 228 Ill. App. 3d 325, 591 N.E.2d 936.

 In the instant case, there was no evidence to support a finding of an unnatural accumulation of ice or water. Plaintiff stated in her deposition that she did not see any ice or water in the area where she fell and that the parking lot was "frosty." There was no affirmative showing that an unnatural condition contributed to plaintiff's fall. Our determination is not altered by deposition testimony which revealed that an unnatural accumulation of water occurred at times, such as when the bakery truck was rinsed. The issue is not whether an unnatural accumulation ever occurred but whether such an accumulation of water or ice caused plaintiff's fall in this case. Since plaintiff presented nothing more than speculation concerning the cause of her fall, the trial court correctly granted summary judgment in this case.

The judgment of the circuit court is affirmed.

RIZZI, J., concurs.

PRESIDING JUSTICE TULLY, dissenting:

I must respectfully dissent from the majority's opinion as I believe the record contains sufficient evidence, when construed in a light

most favorable to plaintiff, upon which a reasonable jury could conclude that defendant is liable to plaintiff.

The summary judgment procedure's purpose is to determine if there are any genuine issues of triable fact. (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 538, 221 N.E.2d 633.) "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) "In determining whether a moving party is entitled to summary judgment, the trial court must consider the entire record and construe the pleadings, depositions, admissions and affidavits *strictly against the movant and liberally in favor of the opponent.*" (Emphasis added.) (*Dietz v. Spalla* (1989), 186 Ill. App. 3d 742, 745, 542 N.E.2d 855.) "If fair-minded persons could draw different conclusions from the evidence, the issues should be submitted to a jury to determine what conclusion seems most reasonable." *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231, 450 N.E.2d 756.

Regarding falls on ice, snow or water, the court in *Stypinski v. First Chicago Building Corp.* (1991), 214 Ill. App. 3d 714, 571 N.E.2d 717, outlined a plaintiff's burden as follows:

> "In Illinois, in order to recover as a consequence of a fall on ice, snow or water, a plaintiff must establish that the accumulation was unnatural in origin and was created directly or indirectly by the landowner. [Citations.] In order to withstand a motion for summary judgment, a plaintiff must allege sufficient facts to permit a trier of fact to find that the defendant was responsible for an unnatural accumulation of water, ice or snow which caused the plaintiff's injuries." (214 Ill. App. 3d at 716.)

In the case *sub judice*, I believe plaintiff met this burden.

Here, there was Coleman's testimony that on the date of plaintiff's fall he noticed a Heinemann's truck at or near the Dominick's entrance where plaintiff fell. Coleman stated that the driver of the truck was washing out the inside of the trailer, leaving water on the pavement, causing the pavement and sidewalk to become slippery. On previous occasions, Coleman noticed that approximately two gallons of water would be left on the area of pavement where the sidewalk abutted the asphalt just west of the store entrance. Coleman stated that he witnessed this happen between 7 a.m. and 9 a.m. twice a week for five years prior to plaintiff's fall. Coleman further testified

that water, residue and asphalt, even in the absence of ice or snow, created a slippery condition.

Additionally, Ballasch testified that it was his usual practice to end his delivery route at the Dominick's at Brementowne Mall, where he would deliver cabinets containing products. This procedure would end at about 7:45 a.m., whereupon Ballasch would go to lunch for one half-hour and then return to the store and pick up empty cabinets. Ballasch stated that he occasionally cleaned out the trailer with buckets containing four to five gallons of water which he obtained from the Heinemann's bakery within the store. On occasion, Ballasch would clean out the trailer both before and after going to lunch. At those times when he washed out the truck, the right side of the trailer would be open, adjacent to the sidewalk where plaintiff fell.

The 7:45 a.m. time at which Ballasch regularly rinsed out the trailer was approximately 10 minutes before the time of plaintiff's arrival at the store on the date of the accident. Thus, it is not unreasonable for the trier of fact to infer that defendant, through Coleman, had actual or constructive knowledge that Ballasch was creating a potentially dangerous condition by allowing the water, flowing from his trailer, to collect on the asphalt immediately in front of the store. Furthermore, it is equally reasonable to conclude that a jury could also infer that the slippery or "frosty" conditions which plaintiff testified were present on the day of the accident were attributable to Ballasch's having washed out the trailer that day. Therefore, I believe that when construing the record liberally in favor of plaintiff it is possible for a fair-minded jury to find in favor of plaintiff. Consequently, the trial court was in error to have entered summary judgment against plaintiff.

For the foregoing reasons, I would reverse the circuit court's order granting summary judgment in favor of defendant and remand this cause for further proceedings.