No. 3-09-0880

_____

Filed November 30, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| <u>In</u> <u>re</u> ESTATE OF ROBERT R. RENCHEN, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Deceased | ) ) | |
| (Robert T. Renchen, | ) ) | |
| Plaintiff-Appellee, | ) | No. 07--P--123 |
| v. | ) ) | |
| Thomas Renchen, William Renchen, and Thomas Renchen, as Guardian of Vera Renchen, | ) ) ) ) | Honorable Kendall O. Wenzelman, |
| Defendants-Appellants). | ) | Judge, Presiding. |

_____

MODIFIED UPON DENIAL OF REHEARING
AND APPLICATION FOR CERTIFICATE OF IMPORTANCE

JUSTICE SCHMIDT delivered the opinion of the court:


In this Supreme Court Rule 308 (155 Ill. 2d R. 308) appeal, we must answer the following question certified by the trial court: whether the finding of paternity in a decree of adoption is dispositive of the paternity of the adopted child when no motion to vacate was timely filed in the adoption case and when thereafter a petition to establish alternative paternity was filed in a collateral probate proceeding. We understand that, in a

vacuum, that question makes no sense. Generally speaking, an adoption cuts off both the obligations and rights of a natural father. For purposes of inheritance, an adopted child is the child only of his adoptive parents. However, the legislature has created a statutory exception which provides that a person adopted by a descendent of a natural parent's grandparent may inherit from both his adoptive and natural parent. 755 ILCS 5/2--4(d)(1) (West 2006).

Under the facts of this case, we answer the certified question in the negative.

FACTS

Judith York gave birth to Robert Todd York (Todd) on November 21, 1968, during her marriage to Gary York. Ergo, Gary York was Todd's presumptive natural father. Judith and Gary later divorced. Judith (now deceased) then married William Renchen. William is a brother to decedent Robert R. Renchen. William and Judith legally adopted Todd. Todd York became Todd Renchen. An adoption order identifies Gary York as Todd's natural father. The adoption terminated Gary York's parental rights. Todd has never challenged the adoption or any part of it. No one disputes that William Renchen is Todd's adoptive and, therefore, legal father.

Robert Renchen, William's brother, died intestate on April 21, 2007. Todd filed pleadings in the probate court alleging that the decedent, Robert Renchen, was, in fact, his natural father. On June 18, 2007, Todd filed a petition for letters of

2

administration claiming that decedent's heirs were:

Robert Todd Renchen, son

Vera Renchen, mother

Richard Renchen, brother

Thomas Renchen, brother

William Renchen, brother

On July 16, 2007, Thomas Renchen, another of William's brothers, filed a petition for letters of administration stating that the heirs of Robert R. Renchen were:

Vera Renchen, mother

Richard Renchen, brother

Thomas Renchen, brother

William Renchen, brother

Also on July 16, 2007, Thomas and William Renchen filed a motion to strike Todd's petition for letters of administration stating that Todd was adopted on February 8, 1973, in Kankakee County by Judith Renchen, his natural mother, and her husband, William Renchen.

On August 22, 2007, Thomas Renchen, William Renchen and Vera Renchen (appellants) filed a motion for summary judgment stating that Todd was the son of William Renchen by virtue of an adoption in Kankakee County dated February 8, 1973. The motion further stated that: (1) Robert Todd Renchen's mother, Judith, was married to a Gary York on December 11, 1965; (2) Robert Todd York was born to Gary and Judith York on November 21, 1968; (3) Judith York then

3

divorced Gary York and subsequently married William Renchen; (4) William and Judith Renchen then filed a petition to adopt Robert Todd York and that petition was granted on February 8, 1973; and (5) Robert Todd York was decreed the adopted child of William and Judith Renchen and the child's name was changed to Robert Todd Renchen. Attached to the motion was an affidavit of Judith Renchen and a copy of the decree of adoption. The motion also stated that this order of adoption was dispositive of the paternity of Todd.

On August 1, 2007, Todd filed a motion for summary judgment claiming that he was the natural son of decedent Robert R. Renchen. He attached a DNA test report in support of his motion. On January 9, 2008, Todd filed a counterpetition to determine the existence of a parent-child relationship. We should note that Todd makes reference to the supporting record in his brief. However, the only record filed with this court is 10 pages which include: Todd's two-page motion for summary judgment and which are marked with an "exhibit 1" sticker; the petition for letters of administration filed by Todd in the circuit court; a two-page affidavit of Richard Renchen; a copy of the decree for adoption; and the DNA test report.

Appellants filed a motion for involuntary dismissal of Todd's counterpetition. Further, they filed a motion to strike Todd's motion for summary judgment as to heirship.

On December 5, 2008, the court denied all motions.

4

Thereafter, on motion of the appellants, the trial court certified the above-mentioned question. On October 20, 2009, we granted appellants' motion for leave to appeal pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308.

## ANALYSIS

Appellants request that we both answer the certified question and reverse the trial court's denial of their motions. However, the scope of review of an interlocutory appeal brought under Illinois Supreme Court Rule 308 is strictly limited to the certified question. *In re Estate of Williams*, 366 Ill. App. 3d 746, 748, 853 N.E.2d 79 (2006). As the question certified by the trial court must be a question of law, the applicable standard of review is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 58, 879 N.E.2d 910 (2007).

The question before us is whether the finding of paternity in a decree of adoption is dispositive as to the adopted child when no motion to vacate was timely filed in the adoption case and when, thereafter, a petition to establish alternative paternity was filed in a collateral probate proceeding. The parties agree that the ultimate issue is heirship.

In the case at bar, Robert R. Renchen died intestate. Todd Renchen filed a petition for letters of administration claiming that he was the son of Robert R. Renchen. He filed various other pleadings, all related to his claim that he is the biological son of Robert. Evidence submitted in support of a motion for summary

5

judgment included DNA test results from DDC DNA Diagnostics that allegedly indicate a 99.995% probability that decedent is the father of Todd Renchen.

Todd Renchen argues that he was adopted by William Renchen "a descendant of the great-grandparent of the child." Therefore, he may inherit from the decedent's estate. The Probate Act of 1975 (Probate Act) states:

"(d) For purposes of inheritance from or through a natural parent and for determining the property rights of any person under any instrument, an adopted child is not a child of a natural parent, *** unless one or more of the following conditions apply:

(1) The child is adopted by a descendent or a spouse of a descendent of a great-grandparent of the child, in which case the adopted child is a child of both natural parents." 755 ILCS 5/2--4(d)(1) (West 2006).

Appellants contend that according to the adoption decree, Todd's natural mother, Judith, was married to Gary York on December 11, 1965. Further, Todd was born to Gary and Judith York on November 21, 1968. Judith York then divorced Gary York and subsequently married William Renchen, who adopted Todd on February 8, 1973. Appellants argue that an adoption decree can be

6

collaterally attacked only on the grounds that the adoption court lacked jurisdiction. *In re J.D.*, 317 Ill. App. 3d 419, 422, 739 N.E.2d 1036, 1039 (2000). Moreover, collateral attacks on adoptions decrees, which disrupt consistently upheld law, and legislative intent have not been, nor should they be, given special treatment within a decedent's estate under the Probate Act.

Todd, on the other hand, argues that he is not attempting to become "un-adopted," nor is he attacking the adoption decree. Rather, he is simply trying to establish heirship under the Probate Act in accordance with section 2--4(d)(1). 755 ILCS 5/2--4(d)(1) (West 2006).

Appellants next argue that Todd's counterpetition to establish a parent-child relationship is barred by the two-year limitations period set forth in section 8(a)(1) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/8(a)(1) (West 2006)). Todd disagrees and cites to *Tersavich v. First National Bank & Trust Co. of Rockford*, 143 Ill. 2d 74, 79, 571 N.E.2d 733 (1991), and section 8(c) of the Parentage Act in support of his argument that the limitations contained in the Parentage Act are applicable to the case at bar. Section 8 of the Parentage Act provides, in pertinent part, as follows:

> "(c) This Act does not affect the time
> within which any rights under the Probate Act
> of 1975 may be asserted beyond the time provided

7

by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise."  750 ILCS 45/8--4(c) (West 2006).

In *Tersevich*, the plaintiff brought an action for declaratory judgment that sought the construction of a trust. The plaintiff alleged that she was the daughter of the decedent and was born out of wedlock.  Defendant moved for summary judgment on the basis that the action was time-barred under section 8 of the Parentage Act.  The trial court granted defendant's motion for summary judgment, and the appellate court reversed.  The supreme court affirmed the holding that, as the illegitimate daughter was an heir of the testator by virtue of the Probate Act, the question of her parentage was not at issue and, therefore, the limitations period of the Parentage Act did not apply.  *Tersavich,* 143 Ill. 2d at 81.  We agree that the facts before us are different from those in *Tersevich*.  We discuss it because a party raised it.  We do not find it controlling.

As in *Tersevich*, Todd is trying to establish heirship under the Probate Act, rather than attempting to establish a parental relationship under the Parentage Act.  We do not find that Todd is trying to "undo" the adoption decree.  He alleges a right to inherit from his natural father due to the fact that the Probate Act allows one to inherit from <u>both</u> the adoptive parent and the natural parent when the adoptive parent is "a descendent or a

8

spouse of a descendent of a great-grandparent of the child." 755 ILCS 5/2--4(d)(1) (West 2008).

The propriety of the trial court's ruling on appellants' motion to dismiss Todd's counterpetition to establish a parent-child relationship is not properly before us. However, we find it necessary to discuss this in order to explain our rationale for our answer to the certified question. Prior to filing the counterpetition, Todd had filed his petition for letters of administration alleging a right to inherit from decedent. As set forth above, this is because he alleges that William is a descendant of a great-grandparent of the child pursuant to section 2--4(d) of the Probate Act. 755 ILCS 5/2--4(d) (West 2008). Establishing a parent-child relationship under the Parentage Act is an entirely different matter from seeking to establish heirship under the Probate Act. This is made plain by the language of the Probate Act, which allows a child to inherit from both his adoptive parent and his natural parent where an adoptive parent is a descendant of a great-grandparent of the child. 755 ILCS 5/2--4(d) (West 2008). That statute clearly presumes that there is no relationship between the child and his natural parent since it involves only a child who has been adopted. Therefore, even though we do not address the propriety of the trial court's ruling in denying appellants' motion to dismiss the counterpetition to establish a parent-child relationship, we find it to be irrelevant to our answer to the certified question. This is because Todd

9

does not need to establish a parent-child relationship with decedent as defined by the Parentage Act in order to inherit. He only needs to prove that the decedent was his natural father.

Under the facts of this case, we find the answer to the certified question to be "No." The facts of this case are rare but not unique. The legislature specifically provided for the course of action now taken by Todd. If Todd can prove that Robert was his natural father, he may inherit from both his natural father and adoptive parents in accordance with section 2--4(d)(1) of the Probate Act. 755 ILCS 5/2--4(d)(1) (West 2006). Contrary to appellants' arguments, a finding in the probate action that Todd is the natural son of Robert would have no effect on the adoption. William Renchen would still be Todd's legal father. The Parentage Act states that its time limitations do not affect the time within which any rights under the Probate Act may be asserted relating to the determination of heirship. See 750 ILCS 45/8(c) (West 2006). Appellants and the dissent would have us read this provision out of the Parentage Act. How else can one establish heirship other than by establishing blood relationships which ultimately depend upon paternity? Why else would the legislature say that the limitations contained in the Parentage Act do not apply when trying to establish heirship under the Probate Act? Clearly, the legislature recognized the obvious: heirship ultimately depends upon paternity. It then clearly stated that the limitations contained in the Parentage Act do not

10

apply to proceedings under the Probate Act relating to the determination of heirship.

The dissent's argument seems to be anchored on a finding by the trial court in the adoption proceeding that Gary York is Todd's natural father. The argument is that it is too late to attack that finding. However, the reason Todd cannot dispute the finding in the adoption proceeding is expiration of the statute of limitations contained in the Parentage Act. The dissent ignores the legislature's directive at section 8(c). 750 ILCS 45/8(c) (West 2006). The limitations do not apply in this probate proceeding.

The dissent implies that Todd must have proved his probate claim before even filing it. Todd alleges a claim against the estate of Robert Renchen. What is magical about this claim where, unlike any other probate claim, it must be proven conclusively before it is filed?

In conjunction with a petition for rehearing, appellants have requested that this court issue a certificate of importance pursuant to Supreme Court Rule 316 (155 Ill. 2d R. 316) "so that the issue may be decided by the Supreme Court." We decline to do so. Should appellants wish to file a petition for leave to appeal pursuant to Supreme Court Rule 315 (236 Ill. 2d R. 315), the supreme court can decide for itself whether it wishes to address this issue. The application for a Supreme Court Rule 316 certificate of importance is denied.

11

CONCLUSION

For the foregoing reasons, we answer the certified question in the negative, deny appellants' petition for rehearing and deny appellants' application for certificate of importance.

Certified question answered.  Petition for rehearing denied.  Application for certificate of importance denied.

WRIGHT, J., concurs.

JUSTICE McDADE concurring in part, dissenting in part:

I concur with the decision to deny the Application for Certificate of Importance.  However, I respectfully dissent from the majority's decision answering the certified question in the negative.

Here, the certified question requires us to examine the impact of the decree of adoption on Todd's right to inherit from decedent.  Todd, however, argues that he "is not attacking the decree of adoption," contending instead that he is merely asserting his right to inherit from his natural father, decedent, under section 2-4(d)(1) of the Probate Act.  Todd reasons as follows.  He is the natural child of decedent.  William subsequently adopted Todd.  William is the brother of decedent.  Decedent and William shared the same grandparents.  Decedent's and William's grandparents were Todd's great-grandparents.  Thus, Todd concludes that he is decedent's child under the exception in section 2-4(d)(1).

I acknowledge Todd's *alleged* family history, however, his

12

argument that he "is not attacking the decree of adoption" is quite simply wrong.  I agree with the majority that Todd is not attempting to be "un-adopted" or to challenge the fact that William is his adopted, and, therefore, legal father.  Indeed that fact is integral to his claim of heirship.  He is, however, challenging the express factual finding made by the circuit court in the adoption decree that Gary York is his natural father.

Todd has a right under section 2-4(d)(1) only if he can establish that decedent is his natural father.  Failure to establish this fact results in his inability to claim he falls within the exception articulated in section 2-4(d)(1).  Unfortunately for Todd, the decree of adoption bars him from attempting to establish that decedent is his natural father.  Again, this is because in the decree of adoption the court expressly *found* that Gary York is Todd's natural father.  Todd did not challenge this finding until the current action, which was filed approximately 19 years after Todd reached the age of majority.  Thus, the decree of adoption must control.  750 ILCS 45/8(a)(1) (West 2006).  Section 8(a)(1) of the Illinois Parentage Act of 1984 (Parentage Act) provides, in pertinent part:

> "An action brought by or on behalf of a child *** shall be barred if brought later than 2 years after the child reaches the age of majority."  750 ILCS 45/8(a)(1) (West 2006).

13

The Act further provides:

> "In any civil action not brought under this Act, the provisions of this Act shall apply *if parentage is at issue*."  (Emphasis added.) 750 ILCS 45/9(a) (West 2006).

While the majority disagrees, I believe parentage is at issue in the case; it is the *only* basis for Todd's claim of heirship. The fact that Todd filed a counter-petition to establish paternity confirms this point.  Specifically, Todd is seeking to establish that decedent was his natural father, not Gary York.  The provisions of the Parentage Act therefore apply (750 ILCS 45/9(a) (West 2006)) and the two-year limitation on actions brought under the Parentage Act has expired (750 ILCS 45/8(a)(1) (West 2006)). Thus, I would find that Todd is barred from attempting to establish that decedent is his natural father.

While the majority relies upon section 8(c) of the Parentage Act,[1] in concluding that section 2-4(d)(1) of the Probate Act is still applicable, it ignores the fact that Todd only has a right under section 2-4(d)(1) if he can establish that decedent is his natural father.  For reasons I have already discussed, Todd is

---

[1]  Section 8(c) of the Parentage Act states: "This Act does not affect the time within which any *rights* under the Probate Act *** may be asserted beyond the time provided by law relating to distribution and closing of decedent's estates or to the determination of heirship, or otherwise." (Emphasis added.)  750 ILCS 45/8(c) (West 2006).

14

barred from even attempting to establish this fact. Thus, Todd simply has no right to even assert under section 2-4(d)(1).

In coming to this conclusion, I reject Todd's reliance on section 3(c) of the Probate Act, which provides that the issue of heirship may be litigated "by any party interested therein in any place or court where the question may arise." 755 ILCS 5/5-3(c) (West 2006). An "interested person" includes "one who has *** a financial interest [] [or] property right *** which may be affected by the action ***, including[,] without limitation[,] an heir." 755 ILCS 5/1-2.11 (West 2006). Because Todd has no interest cognizable under section 2-4(d)(1) of the Probate Act he has no financial interest in decedent's estate and therefore is not an "interested person" under the Probate Act.

Finally, I believe the majority mistakenly finds support for its position in *Tersavich v. First National Bank & Trust Co. of Rockford*, 143 Ill. 2d 74, 571 N.E.2d 733 (1991). I believe it is mistaken because of two factual differences that appear to me to be dispositive. First, I note that the facts of *Tersavich* do not involve a challenge to findings in an adoption decree. And, second, the unrebutted affidavits in *Tersavich* established that prior to his death the decedent had acknowledged that he was the plaintiff's father. Simply put, there was no "other" natural father of record in *Tersavich*. Thus, given the facts of that case, the *Tersavich* court expressly held that parentage was not at issue. *Tersavich*, 143 Ill. 2d at 81, 571 N.E.2d at 736.

15

That is not our case. Here, we have an adoption decree that expressly finds that Gary York, not decedent, is Todd's natural father. No alleged natural father other than Gary York has acknowledged (or can acknowledge) paternity. Indeed the decedent had no opportunity to acknowledge or deny paternity because the issue did not arise until after his death. Under these circumstances, it simply defies logic to conclude that parentage is not at issue in this case. The *Tersavich* court would have found the limitations period of the Parentage Act applicable if parentage had been at issue. *Tersavich*, 143 Ill. 2d at 81, 571 N.E.2d at 736. Since parentage is clearly at issue in the instant case, it is my position, not the majority's, that is actually supported by the *Tersavich* court's reasoning.

For the foregoing reasons, I would answer the certified question in the affirmative and remand the cause to the trial court for further proceedings.